## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

__NOT FOR PUBLICATION__

------------------------------------------------------
                                                    :
ARTERIA PROPERTY PTY LTD.                           :
                                                    :
                    Plaintiff,                      :
                                                    :         Civil Action 05-4896 (PGS)
                                                    :
            v.                                      :              __OPINION__
                                                    :
UNIVERSAL FUNDING V.T.O., INC.,                     :
et al.,                                             :
                                                    :
                 Defendants.                        :
------------------------------------------------------ :

S̲ALAS, U.S. M̲AGISTRATE J̲UDGE:

        This matter comes before the Court on the motion of Plaintiff for spoliation sanctions

specifically seeking an adverse inference in Plaintiff's favor. Pro Se Defendant Vincent O'Hara

has opposed the motion.  For the reasons set forth herein, Plaintiff's motion is hereby granted in

full.

## BACKGROUND

        The claims and history of this litigation are extraordinarily familiar to the parties and to

the Court, and shall not be repeated here at length. This matter allegedly arises from failed

negotiations between Plaintiff Arteria Property, Ltd. ("Arteria") and Defendants, Universal

Funding V.T.O., Inc. ("Universal") and Vincent T. O'Hara ("O'Hara") (collectively

"Defendants"). [See Complaint, Document No. 1]. The purpose of the agreement between

Plaintiff and Defendants was to secure for Plaintiff a long-term loan of $125,000,000.00 to

develop certain parcels of real estate in Australia. [*Id.*].

The instant dispute in this matter regards the alleged lack of production and spoliation of two documents: (1) a letter purportedly from the Bank of New York; and (2) Defendants' website as it existed during the time that the dispute between the parties first arose.

Despite the recent objection by the Defendant as to the assertion that the Bank of New York[1] letter exists, there have been several direct and indirect affirmations of the existence of this document made by Defendants throughout the pendency of this litigation. First, on March 1, 2006, Defendants provided in their Rule 26 disclosures that they had in their possession a "Letter on Bank of New York stationary dated on around June 15, 2005." [Ex. A to Certification of Barry M. Kazan in Support of Motion "Kazan Cert."]. Second, on November 27, 2006, Defendants' counsel, in response to a discovery deficiency letter sent by Plaintiffs, indicated that "[w]ith regard to the 'Letter on Bank of New York stationary dated on or around June 15, 2005', Defendant is still attempting to locate this document and will provide a copy when same is found. [Ex. E to Kazan Cert.]. Finally, at the January 15, 2007, deposition of O'Hara, O'Hara testified that he thought "Sam", the Bank of New York representative put something in writing, but when pushed further, O'Hara indicated that he did not remember it at all. [Ex. D 104:7-22 to Kazan Cert.].

---

[1] Plaintiff has never been in possession of this document. However, Plaintiff asserts that this is a handwritten letter on Bank of New York letterhead, which O'Hara represented to Plaintiff's employee, Magy Adam, had come from the Bank of New York. [See Plaintiff's Memorandum of Law in Support of Motion, 3]. O'Hara allegedly showed this document to Ms. Adam during a meeting on June 15, 2005. [See Certification of Magy Adam, 3]. According to Ms. Adam, the letter indicated that, upon Plaintiff's wiring a $50,000.00 "application fee" to the account of Universal, the Bank of New York stood ready to fund the $125,000,000.00 loan to Plaintiff. [*Id.*]. Ms. Adam claims that she independently verified the information contained in the Bank of New York Letter via a telephone call to Samuel Saporete of the Bank of New York. [*Id.*]. Ms. Adam claims that, based on these representations, the wire transfer was made. [*Id.* at 3-4].

Ultimately, the Bank of New York letter has never been produced.  On January 3, 2007, the Honorable Ronald J. Hedges, U.S.M.J., heard counsel on the matter of the Bank of New York Letter.  At such time, Judge Hedges entered an Order whereby Defendants were "deemed to have admitted that as of December 18, 2006, they do not have within their possession, custody or control: (1) the "Letter on Bank of New York stationary dated on or around June 15, 2005." [Docket Entry No. 20].

As to the Universal Website, Plaintiff is seeking electronic snapshots or paper copies of the website.  Plaintiff asserts that at the time it and Defendants were negotiating the loan, Defendants' website had claimed that Universal was "one of the leading lenders serving the real estate market" with more than "50 years of Commercial Mortgage Banking experience."  [Pl. Br. at 4].  On or about, May 10, 2006, Defendants served their response to Plaintiff's Notice to Produce. [Ex. B to Kazan Cert.].  Defendants advised that "Defendant has requested copies of its web-site and will provide same upon receipt." [*Id.*]. Additionally, during O'Hara's January 15, 2007, deposition, the following testimony was garnered

> Q. And there was. --there is or was a statement on the website that referred to Universal as one of the leading lenders serving the real estate market?
>
> A. Yeah.
>
> Q. What's the basis of that statement?
>
> ....
>
> A. I guess maybe that's what Karen and this other gentleman, who put it together, wanted to put in there.
>
> Q. Is that a true statement?
>
> A. Pardon me?
>
> Q. Is that a true statement?
>
> A. No, a little falacious information. I guess it was just to get people, you know, to come into, you

> know, our organization to get. -- for us to get funding for.
>
> ....
>
> Q. And it also held Universal out as having over 50 years commercial mortgage banking experience?
>
> A. Well, I figured the people and the Associations I have dealing with, we add all our times together, it would equal 50 years from CIT to Meecorp to Kennedy Funding.

[*Id.* at Ex. D, 164-165]. Essentially, Defendants confirmed the existence of the website and more importantly, confirmed Plaintiff's representation of its content.

Ultimately, the documents relating to the website have never been produced. On January 3, 2007, Judge Hedges heard counsel on the matter of the website. At such time, Judge Hedges entered an Order whereby Defendants were "deemed to have admitted that as of December 18, 2006, they do not have within their possession, custody or control: (2) electronic snapshots or paper copies of Universal Funding V.T.O., Inc's website." [Docket Entry No. 20].

## PROCEDURAL HISTORY

On January 3, 2007, Judge Hedges entered an Order in this case permitting Plaintiff to file a motion for spoliation sanctions which must be raised in connection with the final pre-trial Order. On March 21, 2007, this matter was referred from Judge Hedges to this Chambers. At such time, this Court set a final pre-trial conference for June 11, 2007, which was later adjourned to September 27, 2007. On May 17, 2007, the Court set a briefing schedule requiring that each party file its spoliation motion by May 25, 2007 with opposition being due no later than June 4, 2007. [Docket Entry No. 22]. Plaintiff filed its motion on May 25, 2007. The Defendants did not file an opposition.

On September 24, 2007, the Court received a letter from Defense counsel advising the Court that he had not been in contact with the defendants for the past eight months and that

counsel would be seeking leave to withdraw as counsel. The Court converted the final pre-trial conference into a telephone status conference.  During the conference, the Court granted defense counsel's request to file a motion to withdraw.  The motion was unopposed and the Court granted Defense counsel's request to be withdrawn as counsel for the Defendants on December 6, 2007.  The Court entered an order giving the Defendants until January 2, 2008 to secure new counsel.  On December 28, 2007, the Court denied Plaintiff's motion for an adverse inference without prejudice to enable the Defendant's to obtain new counsel that could adequately oppose a new motion.

Shortly after the deadline for securing new counsel had passed, the Court held a telephone conference with Plaintiff and O'Hara (proceeding *pro se* at this point).  During the conference, O'Hara informed the Court that he was still attempting to secure new counsel and the Court permitted the Defendants an additional 30 days to secure new counsel.  On February, 2008, the Court held a status conference to ascertain whether counsel has been obtained on behalf of the Defendants.  Mr. O'Hara informed the Court that he was actively looking for counsel and believed that new counsel could be obtained shortly.  Based on this representation, the Court reluctantly provided one further extension.  On March 7, 2008, Mr. O'Hara informed the Court that he had not obtained counsel and the Court therefore permitted Plaintiff renew its spoilation motion and to file a motion for default judgment as to Universal.  When Plaintiff informed the Court that O'Hara had not opposed the motion, the Court on April 29, 2008, sent Mr. O'Hara a letter order via regular and certified mail directing Mr. O'Hara to advise the Court whether he was going to oppose the motion.  On July 24, 2008, this Court held an in-person status conference in which both Mr. O'Hara and plaintiff's counsel attended.  Following Mr. O'Hara's

assurances that he would make every effort to oppose plaintiff's submission, the Court

reluctantly granted Mr. O'Hara until August 28, 2008 to file.  In turn, Mr. O'Hara, in a letter

dated September 3, 2008, wrote that "Universal-Funding VTO, Inc. disagrees on "The Motion of

Spoliation"[.] This never happened."

## DISCUSSION

Spoliation of evidence is defined as "the destruction or significant alteration of evidence,

or the failure to preserve property for another's use as evidence in pending or reasonably

foreseeable litigation."  *Mosaid Techn., Inc. v. Samsung*, 348 F. Supp.2d 332, 335 (D.N.J. 2004)

(citation omitted).  When spoliation occurs, the Court may impose sanctions on the offending

party because a litigant is "under a duty to preserve what it knows, or reasonably should know,

will likely be requested in reasonably foreseeable litigation."  *Scott v. IBM Corp.*, 196 F.R.D.

233, 249 (D.N.J. 2000).  The range of potential spoliation sanctions includes dismissal of the

action, exclusion of evidence, an instruction to the finder of fact allowing for an adverse

inference, attorney's fees, and costs.  *Mosaid*, 348 F. Supp.2d. at 335.  Ordinarily, in selecting an

appropriate sanction, courts consider:

> (1) the degree of fault of the party who altered or destroyed the
> evidence; (2) the degree of prejudice suffered by the opposing
> party; and (3) whether there is a lesser sanction that will avoid
> substantial unfairness to the opposing party and, where the
> offending party is seriously at fault, will serve to deter such
> conduct by others in the future.

*Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

In this case, Plaintiff has requested that this Court order that an adverse inference be

entered concerning the destroyed evidence. An adverse inference or spoliation instruction, which

is generally regarded as a rather mild spoliation-related sanction, *see Schmid*, 13 F.3d at 79

(recognizing that the exclusion of evidence is a "far more serious" sanction than the spoliation

inference); *Mosaid*, 348 F. Supp.2d at 335 (calling the spoliation inference a "lesser sanction"

than dismissal or evidence suppression), informs the trier of fact that it may "receive the fact of

the document's nonproduction or destruction as evidence that the party that has prevented

production did so out of the well-founded fear that the contents would harm him." *Brewer v.

Quaker State Oil Ref. Co.,* 72 F.3d 326, 334 (3d Cir. 1995) (citation omitted).   Before giving an

adverse inference instruction, the Court must find that: (1) the evidence was within the party's

control; (2) there was an "actual suppression or withholding of evidence;" (3) the evidence

destroyed or withheld was relevant to the claims or defenses; and (4) it was reasonably

foreseeable that the evidence would be discoverable. *Id.*

**A. Bank of New York Letter**

Here, the Court finds that the actions of the Defendants warrants a spoliation inference.

There is very little controversy in the law concerning factors one, three or four, and the Court

finds based on Plaintiff's showing that these factors are present.  The facts establish that the Bank

of New York letter was at one in the control of the Defendants.  The Defendants' Initial

Disclosures specifically identified the Bank of New York letter as a relevant document in their

possession.  Additionally, Magy Adam certified that O'Hara showed Adam the Bank of New

York letter on June 15, 2005.  These facts together establish that the Defendants were in control

of the letter.  The Court also finds that factor three is established, as the New York letter is

clearly relevant to Plaintiff's claims.  As indicated by Magy Adam, the Bank of New York letter

produced by O'Hara induced Plaintiff to wire the $50,000 application fee to Universal's account.

Yet the existence of the document is contradicted by O'Hara, who at his deposition, answered that he did not recall ever having something on the Bank of New York stationary related to Plaintiff. [Ex D 94:19-22, Kazan Cert.].  This document is clearly relevant to the case.  Similarly, the Court finds that factor four is established as it would be reasonably foreseeable that the documents would later be sought in discovery. As indicated above, the Defendants listed the Bank of New York letter in their Rule 26 disclosures.  Clearly, the Defendants were aware that the letter would be sought in discovery.

Now turning to the second factor, district courts within the Third Circuit are split regarding the showing necessary to satisfy the "actual suppression" requirement.  Some have found that an adverse inference arises when spoliation "was intentional, and indicates fraud and a desire to suppress the truth, and . . . not . . . where the destruction was a matter of routine with no fraudulent intent."  29 AM. JUR. 2D *Evidence* § 244 (2006). Other authority requires spoliation to be the result of intentional conduct before giving an adverse inference instruction.  *Veloso v. Western Bedding Supply Co.*, 281 F. Supp. 2d, 743, 746-49 (D.N.J. 2003); *Costello v. City of Brigantine*, No. 99-4072, 2001 WL 732402, at *26 (D.N.J. Jun. 28, 2001).  Still, some Courts have held that the adverse inference is justified where evidence has been negligently destroyed. *Mosaid*, 348 F. Supp 2d at 337-38; *Scott*, 348 196 F.R.D. at 248-49 (finding that spoliations might be appropriate where there was nothing to indicate documents were intentionally destroyed).  There is, thus, an inter-district split as to the requisite culpability of a purported spoliator needed to trigger an adverse inference.[2]

---

[2]There is also an intra-circuit split as to the necessary culpability of a spoliator to trigger the adverse inference.  *Compare Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) ("[w]e reject the argument that bad faith is an essential element of the spoliation rule") *with Henning v. Union Pacific R. Corp.*, 530 F.3d 1206,

This Court need not delve into these murky waters, as either under a negligence or bad faith/intentional destruction standard, an adverse inference is warranted here. The Defendants admitted in their Rule 26 disclosures to have in possession the Bank of New York letter, yet when pressed about the issue in his deposition, O'Hara stated that he did not know anything about the letter. This tends to show that Defendants either had the document and then willfully destroyed it, or had the document and lost it, which would constitute bad faith or negligence, respectively. What was once under the control of the Defendants is now gone. The factors justifying an adverse inference have been met as to the this letter and the jury should be instructed accordingly.

**B. Universal's Website**

As to the Universal website documents, the Court finds that an adverse inference is warranted here, as well. There seems to be no dispute that the website was in existence during the period of June through October of 2005. Plaintiffs filed this action in October, 2005. Thus, at the very least, Defendants had reason to believe they'd be haled into Court, and at worst, the website was destroyed after this lawsuit had been filed. They were thus required to maintain the website. *Cf. Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents"). Moreover, deleting files can constitute spoliation of evidence. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006).

---

1220 (10th Cir. 2008) (requiring evidence of bad faith or intentional destruction to warrant an adverse inference instruction).

The only question is whether or not the website was under the control of Defendants. This Court sees no reason to treat websites differently than other electronic files.  Where, as here, Defendants had control over the content *posted* on its website, then it follows *a fortiori* that it had the power to delete such content.  Although Defendants do not so posit, it may be argued that the website was maintained by a third party, perhaps a web design company who posted content on behalf of Defendants.  But this is irrelevant, just as it'd be irrelevant if the website was maintained on a third party server rather than Defendant's own server (as is likely the case here). Despite the inevitable presence of an intermediary when posting content on the Web, the Court finds that Defendants still had the *ultimate* authority, and thus control, to add, delete ,or modify the website's content.  There is no evidence to the contrary.

Inherent powers must be exercised with restraint and discretion. *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). A primary aspect of a district court's discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.  *Id.*  Thus, a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified.  *Id.*  In exercising its discretion under its inherent powers, the court should be guided by the same considerations that guide it in the imposition of sanctions under the Federal Rules. *Id.*  The court must consider the conduct at issue and explain why such conduct warrants sanction.  *Id.*

Plaintiff has provided this Court with an "adequate factual predicate for flexing" its muscles to impose sanctions. *Id.*  Therefore, this Court determines that, based on Defendants actions of either willfully withholding the documents or destroying them, an adverse inference

should be provided to the jury at an appropriate time to be determined by the Honorable Peter G.

Sheridan, U.S.D.J.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for an Adverse Inference in Favor of

Plaintiff, is hereby **GRANTED** in full.


**s/ Esther Salas**
_____
_____
**ESTHER SALAS**
**UNITED STATES MAGISTRATE JUDGE**